**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**FILED**

MAR - 6 2023

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

**SA23 CR0140 FB**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | |
| **(1) EVAN ASHER FIELD, and** | |
| **(2) MICHAEL DOMINIC DIAZ,** | |
| **Defendants.** | |

**INFORMATION**

**COUNT 1: 18 U.S.C. § 371 – Conspiracy to Defraud the United States and Violate 21 U.S.C. § 331 – Introduction of Misbranded Drugs into Interstate Commerce.**

**THE UNITED STATES ATTORNEY CHARGES:**

At all times material to this Information:

### LEGAL BACKGROUND

1.      The Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq., regulates, among other things, the importation, manufacture, labeling, and distribution of drugs. The FDCA gives the Food and Drug Administration (FDA) the authority to regulate the importation, manufacture, labeling, and distribution of drugs to protect the health and safety of the American public.

2.      Under the FDCA, the term "drug" is defined in relevant part as: (1) any article intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in humans; or (2) any article other than food intended to affect the structure or any function of the human body.

3.      Whether a product is considered to be a drug is determined by its "intended use." Intended use of a product refers to the objective intent of those legally responsible for the labeling of the product and may be shown by direct expressions of the intended use, or the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements.

4.      All drugs are required to have labeling that bears certain information. Labeling is a broad term and not only includes the label (which is the written display on the immediate container of the drug) but any other written, printed, or graphic matter upon the drug or any of its containers or wrappers, or accompanying such drug as part of an integrated distribution scheme.

5.      Some drugs regulated under the FDCA are "prescription drugs." Prescription drugs are those drugs which, because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use, are not safe for use except under the supervision of a practitioner licensed by law to administer such drugs, or which are required by an FDA approved application to be administered under the professional supervision of a practitioner licensed by law to administer such drugs.

6.      Any person who owns or operates an establishment in the United States that manufactures, prepares, propagates, compounds, processes, or repackages drugs must register the establishment with the FDA.

7.      The FDCA prohibits the introduction or delivery for introduction into interstate commerce, or the causing thereof, of any drug that is misbranded.

8.      A drug is misbranded if, among other reasons:

      a. it was manufactured, prepared, or repackaged at an establishment not registered with the FDA;

2

b.  its labeling was false or misleading in any particular;

c.  if it is a prescription drug dispensed without the prescription of a practitioner licensed by law to administer prescription drugs; or

d.  if it is a prescription drug and failed to bear the label "Rx only".

## DEFENDANTS AND THEIR BUSINESSES

11.    Defendants EVAN ASHER FIELD and MICHAEL DOMINIC DIAZ resided in or around New Braunfels, Texas, which is within the Western District of Texas.

12.    Beginning no later than August of 2019, Defendants FIELD and DIAZ owned and operated multiple businesses and their associated websites, including "Proximo Research" and "Gulf Coast Chems".

13.    Both Proximo Research and Gulf Coast Chems offered misbranded prescription drugs for sale through the internet.  The websites allowed end consumers to place orders for these drugs and have them shipped to the customer's addresses via the United States postal service and other common carriers.

14.    The drugs sold by Proximo Research and Gulf Coast Chems were stored and repackaged at facilities under the control of FIELD and DIAZ in New Braunfels, Texas, and were mailed in interstate commerce to end consumers across the United States from New Braunfels or other cities nearby.

## COUNT ONE
## CONSPIRACY TO DEFRAUD THE UNITED STATES AND TO VIOLATE 21 U.S.C. 331 – INTRODUCTION OF MISBRANDED DRUGS INTO INTERSTATE COMMERCE
[18 U.S.C. § 371 and 21 U.S.C. § 331]

16.    Count One incorporates by reference each and every paragraph of the Information as though fully restated and re-alleged herein.

3

17.     Beginning no later than August of 2019 and continuing through at least June of 2022, in the Western District of Texas and elsewhere, the Defendants

**EVAN ASHER FIELD**
**and**
**MICHAEL DOMINIC DIAZ**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others, known and unknown to the Grand Jury, to:

(a) defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the FDA to regulate the manufacture, storage, and shipment of drugs; and

(b) to violate 21 U.S.C §§ 331(a), with the intent to defraud and mislead, by introducing misbranded drugs into interstate commerce.

### Purpose of the Conspiracy

18.     It was the purpose of the conspiracy for FIELD and DIAZ to profit from distributing drugs for human consumption outside the regulatory oversight of the FDA, which interfered with and obstructed the FDA's lawful function of regulating drugs and drug manufacturers, and which introduced misbranded drugs into interstate commerce.

### Manner and Means of the Conspiracy

19.     In or about September of 2019, FIELD created the website proximoresearch[.]com. The website began accepting orders and shipping drugs in packages in or about October of 2019.

20.     The proximoresearch[.]com website offered various drugs for sale via mail order including, but not limited to: Clonazolam, Flubromazolam, Fluclotizolam, advertised as diazepines, O-Desmethyl-cis-tramadol (ODSMT) and 2-Methyl-AP-237 (2MAP).  These drugs

are not approved by FDA for any use in the United States and are not controlled under the Controlled Substances Act.

21.     At least some of these drugs were purchased by FIELD and DIAZ in bulk quantities from sellers located outside of the United States, primarily China.

22.     If consumed by humans, these drugs can potentially cause toxic and even fatal overdoses and are therefore prescription drugs.  Proximo Research did not require evidence or submission of a lawful prescription before accepting payment for and shipping the drugs.

23.     Once orders were placed through the website, FIELD and DIAZ, assisted by other employee co-conspirators, would repackage the drugs into consumer-size containers and ship them from New Braunfels, Texas to the purchaser.  Orders were shipped from Texas to various locations throughout the United States.

24.     FIELD employed DIAZ to assist in the business, including transporting the drugs from where they were stored in New Braunfels to shipping drop off locations.

25.     In or about September of 2021, the proximoresearch[.]com website was taken offline.

26.     Shortly afterwards, DIAZ formed Gulf Coast Chems LLC and began operating an almost identical mail order drug business via a new website – gulfcoastchems[.]com.  Apart from some minor cosmetic details, Gulf Coast Chems and Proximo Research offered virtually the same service to consumers.

27.     From at least September of 2021 to June of 2022, DIAZ continued operating Gulf Coast Chems with other co-conspirators, both known and unknown, including personally dropping off packages at various shipping locations.

28.     Although the websites and other product labeling contained disclaimers that the drugs being sold were "for research purposes only" and "not for human consumption", FIELD and DIAZ were aware that individual people were buying the drugs for personal use and operated the websites with the understanding that at least some purchasers were consuming the drugs.  The drugs were therefore "misbranded" in an attempt to evade the FDA's regulatory oversight and authority.

### Overt Acts

29.     In furtherance of the conspiracy, and to achieve the object and purpose thereof, at least one of the conspirators committed and caused to be committed, in the Western District of Texas and elsewhere, at least one of the following overt acts, including:

a. In or about September of 2019, FIELD created the proximoresearch[.]com website.

b. Between approximately August of 2019 and September of 2021, Defendants FIELD and DIAZ, aided and abetted by co-conspirators both known and unknown, operated the proximoresearch[.]com website and accepted payment in return for delivering misbranded drugs to end consumers.

c. On or about August 2, 2021, FIELD and DIAZ accepted payment through the proximoresearch[.]com website from an undercover officer in return for delivering the drug 2MAP.

d. In or about September of 2021, DIAZ created the gulfcoastchems[.]com website.

e. Between approximately September of 2021 and June of 2022, Defendant DIAZ, aided and abetted by co-conspirators both known and unknown, operated the gulfcoastchems[.]com website and accepted payment in return for delivering misbranded drugs to end consumers.

  f. On or about October 6, 2021, DIAZ accepted payment through the gulfcoastchems[.]com website from an undercover officer in return for delivering the drug ODSMT.

JAIME ESPARZA
UNITED STATES ATTORNEY

By:

FOR JUSTIN CHUNG
Assistant United States Attorney

FOR AMY MARIE HAIL
Assistant United States Attorney